IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT DOLEMBA, | ) | |
| on behalf of plaintiff and the class defined below, | ) ) ) | |
| Plaintiff, | ) ) | 18 C 3370 |
| vs. | ) ) | Judge Kendall |
| | ) | Magistrate Judge Schenkier |
| NATIONAL GAS AND ELECTRIC, LLC, and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
NATIONAL GAS AND ELECTRIC, LLC'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

Plaintiff Scott Dolemba ("Plaintiff") respectfully submits his response in opposition to defendant National Gas and Electric, LLC's ("Defendant") motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

Defendant argues that plaintiff has not alleged that the ATDS used to make calls to plaintiff had the capacity for generation of random or sequential phone numbers for the first call plaintiff received on his cell phone. Under the FCC's interpretation of the Telephone Consumer Protection Act ("TCPA"), plaintiff does not have to allege or show that defendant's equipment had the capacity for generation of random or sequential phone numbers.

Plaintiff and his wife have no relationship with defendant and did not consent to receiving calls from defendant. Defendant called plaintiff on at least three occasions on his or his wife's cell phone. When Plaintiff answered the first call on April 25, 2018, there was a pause, and he

1

was greeted with silence before he was connected with one of defendant's live representatives. The prolonged period of silence is indicative of the use of a predictive dialer. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014 at ¶ 8, n. 31 (2003) "In some instances, a consumer answers only to hear 'dead air' because no telemarketer is free to take the call.""[C]onsumers are often frightened by dead-air and hang-up calls generated by predictive dialers believing they are being stalked." *Id*. at ¶ 19. "The record also reveals that predictive dialers are responsible for the vast majority of abandoned telemarketing calls – both hang-ups and 'dead air' calls. *Id*. at ¶ 147.

      In 2003, the FCC determined that:

> The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation. . . . .Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment." and the intent of Congress.

*Id. at* ¶¶ 131 and 133.

      The FCC reaffirmed the 2003 Order in both 2008 and 2012. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 ¶¶ 12-14 (2008) ("In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, ¶2, n.5 (2012) ("The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human

intervention regardless of whether the numbers called are randomly or sequentially generated or come form calling lists."). The FCC issued another ruling in 2015 regarding the ATDS, which was appealed in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018).

Defendant's argument is based on an overly broad interpretation of the D.C. Circuit's decision in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018) ("*ACA Int'l*"). Defendant's motion is premised on the incorrect belief that after *ACA Int'l*, the FCC's determinations that predictive dialers are ATDS under the TCPA and caselaw relying on the same are no longer valid. In *ACA Int'l* the D. C. Circuit reviewed the 2015 FCC Order, but did not adopt any interpretation of the capacity of an ATDS.

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

*Id*. at 702-703. The 2003 FCC Order was clear that "while some predicitve dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS." *ACA Int'l*, 885 F.3d at 702.

Predictive dialers are ATDS under FCC orders from 2003, 2008 and 2012 and these determinations were not invalidated or changed by *ACA Int'l*. "Indeed, beyond *not* expressly repudiating the 2003 FCC Ruling, 2008 FCC Ruling, and 2012 FCC Ruling discussed above, ACA International supports the conclusion reached in Reyes because the D.C. Circuit explicitly acknowledged the FCC's 2003 determination that, 'while some predictive dialers cannot be

programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of ATDS.'" *Ammons v. Ally Financial, Inc.*, 326 F.Supp.3d 578 (M.D. Tenn. 2018) (citing *ACA Int'l*, 885 F.3d at 702); "This Court concludes that it is still bound by the FCC's 2003 ruling that a predictive dialer is an autodialer, even if the device does not dial random or sequentially generated numbers." *Maes v. Charter Communications*, 18-cv-124, 2018 WL 5619199 (W.D. Wisc. Oct. 30, 2018); "But the Court finds that the prior FCC Orders are still binding. Therefore, the ACA International case does not change the Court's conclusion on the ATDS issue." *Reyes v. BCA Financial Services, Inc.*, 312 F.Supp.3d 1308, 1320 (S.D. Fla. 2018); *"*In *ACA International,* the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination that, 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS.'" *Swaney v. Regions Bank*, 13-cv-544, 2018 WL 2316452, at *1-2 (N.D. Ala. May 22, 2018); "Given the ACA Int'l decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS." *Maddox v. CBE Group, Inc.*, 17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018).

Moreover, the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) considering the definition of an ATDS under the TCPA held:

> Despite the ambiguity of the statutory definition of ATDS, reading the definition "in [its] context and with a view to [its] place in the overall statutory scheme," Brown & Williamson Tobacco Corp., 529 U.S. at 133, 120 S.Ct. 1291, we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator." but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the

capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers.

In addition, other courts have found that allegations similar to those alleged by plaintiff in this case referencing "dead air", "distinct pause" or a "period of silence" were sufficient to plead an ATDS. *Maes v. Charter Communications*, 18-cv-124, 2018 WL 5619199, at *1 (W.D. Wisc. Oct. 30, 2018); *Washington v. Ross Medical Education Ctr*., 18-cv-139, 2018 WL 2336073, at *1 (N.D. Ind. May 22, 2018); *Evans v. Nat'l Auto Division, LLC*, 15-8714, 2016 WL 885050, at *2 (D.N.J. March 8, 2016); *Barnes v. Santander Consumer USA, Inc*., 14-cv-1941, 2015 WL 12777362, at *1 (N.D. Ohio June 15, 2015); *Crawford v. Target Corp*., 14-cv-90, 2014 WL 5847490, at *3 (N.D. Tex. Nov. 10, 2014).

Defendant relies on *Pinkus v. Sirius XM Radio, Inc*., 319 F.Supp. 3d 927 (N.D. Ill. 2018) to support its argument that a predictive dialer without capacity to generate randomly or sequentially telephone numbers to be dialed is not an ATDS. (Def. Memo., p. 3) However, the phrase relied on by the *Pinkus* court and cited by defendant, references *Dominguez v. Yahoo, Inc*., 629 F.App'x 369, 372 (3d Cir. 2015). The unrealistically narrow definition of an ATDS adopted by the *Dominguez* court and the *Pinkus* court was dismissed by the Ninth Circuit in *Marks v. Crunch San Diego*, 904 F.3d 1041, n.8 (9th Cir. 2018) ("Therefore, we decline to follow the Third Circuit's unreasoned assumption that a device must be able to generate random or sequential numbers in order to qualify as an ATDS. . . . Because the Third Circuit merely avoided the interpretative questions raised by the statutory definition of ATDS, its unpublished opinion is unpersuasive.").

As defendant notes, District Courts disagree as to whether *ACA Int'l* left the FCC Orders

5

from 2003 and 2008 intact. "[M]ost district courts considering the question have held that *ACA International* vacated only the 2015 Declaratory Ruling – and therefore that courts remain bound by the FCC's rulings in the 2003 Order and 2008 Declaratory Ruling that a predictive dialer need not have the capacity to 'generate random or sequential numbers to be dialed.' *ACA Int'l*, 885 F.3d at 702, to qualify as an ATDS." *Pinkus*, 319 F.Supp.3d at 934. The *Pinkus* Court acknowledged that it took "a different view" in holding that *ACA Int'l* invalidated the FCC's 2003 Order, 2008 and 2015 Declaratory Rulings. *Id*. at 935. This Court should follow the majority of courts who have considered this issue.

Defendant also relies on the Second Circuit decision in *King v. Time Warner Cable Inc.*, 894 F.3d 473 (2d Cir. 2018). The Second Circuit held that an ATDS refers to "a device's current functions, absent any modifications to the device's hardware or software." *Id*. at 481. Further, the Second Circuit held that "courts may need to investigate, on a case-by-case basis, how much is needed to activate a device's autodialing potential in order to determine whether it violates the TCPA." *Id*. Additional discovery may be necessary to determine the capacity of defendant's calling equipment. In any event, plaintiff has plausibly alleged defendant's use of an ATDS to make the alleged unsolicited calls to plaintiff.

Moreover, substantive decisions should await discovery as to exactly what equipment defendant used to make the calls and what the equipment can do.

For the foregoing reasons, plaintiff's amended complaint sufficiently alleges that defendant used an ATDS when it made the unsolicited call to plaintiff on his cell phones. Plaintiff respectfully requests that defendant's motion for partial judgment on the pleadings be denied.

6

Respectfully submitted,

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

## **CERTIFICATE OF SERVICE**

      I, Daniel A. Edelman, certify that on November 28, 2018, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system which caused notice via email to be sent to the following:

      Jared A. Wilkerson - jared.wilkerson@morganlewis.com
      Michelle D. Pector - michelle.pector@morganlewis.com
      Morgan Lewis & Bockius, LLP
      1000 Louisiana Street, Suite 4000
      Houston, Texas 77002

      Tinos Diamantatos – tinos.diamantatos@morganlewis.com
      William J. Kraus - william.kraus@morganlewis.com
      Morgan Lewis & Bockius LLP
      77 W. Wacker Drive, Suite 500
      Chicago, IL 60601

                                        s/ Daniel A. Edelman
                                        Daniel A. Edelman


Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200